(C. D. 189)

Shell Eastern Petroleum Products, Inc., et al. *v.* United States

United States Customs Court, First Division

(Decided July 6, 1939)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel); *Sharretts & Hillis*, associate counsel (*Edward P. Sharretts* of counsel), for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Ralph Folks, Marcus Higginbotham, Jr.,* and *John J. McDermott*, special attorneys), for the defendant.
*William Whynman* filed a brief as *amicus curiae.*

Before McClelland, Sullivan, and Brown, Judges; Brown, J., dissenting

McClelland, Presiding Judge: The merchandise the classification of which is the subject of these protests is described on the invoices as "naphtenic oil residue" and was designated and referred to throughout the trial by counsel and the witnesses for both parties as naphthenic acid. Although the rate of duty assessed on the merchandise was the same in all cases, namely, 25 per centum ad valorem, the merchandise involved in certain of the entries covered by protests 888006–G, 888726–G, 914610–G, 927107–G, 930280–G, 936191–G, 941715–G, 946977–G, and 954216–G was classified by the collector as a chemical compound under paragraph 5 of the Tariff Act of 1930, while the mer-

chandise covered by all of the other protests and entries was classified as acids not specially provided for under paragraph 1 of the same act. The protests have been limited to the claim made for free entry under the provision in paragraph 1733 for "All distillates obtained from petroleum, * * * not specially provided for."

The issue thus presented is not new. Merchandise conceded to be identical in all respects to that here involved was the subject of decision by this court in *Shell Eastern Petroleum Products, Inc.* v. *United States*, T. D. 49026. Our decision in that case, which was favorable to the claim made for free entry under paragraph 1733, *supra*, was affirmed on appeal to the Court of Customs and Patent Appeals in *United States* v. *Shell Eastern Petroleum Products, Inc.*, 26 C. C. P. A. 132, C. A. D. 6. The record in that case was, by stipulation of counsel, made a part of the record herein, and in addition thereto five witnesses were called to testify.

One of such witnesses was Alfred A. Wells, a chemist who had testified on behalf of the plaintiff in the incorporated record and who was recalled at the request of the defendant for further cross-examination. The additional testimony offered on behalf of the defendant in the case at bar was given by witnesses Vesper and Fisher, who had testified on behalf of the defendant in the incorporated record, and by witnesses McSorley and Kalichevsky, both of whom were shown to be qualified chemists. On behalf of the plaintiffs the testimony of Mr. Wells was offered in rebuttal.

The complete record now before us is highly technical and very detailed. Some parts of the testimony given in the earlier case have been in a measure contradicted by the additional evidence produced in the case at bar, while other parts of the testimony are shown to have been susceptible of explanation which has been made in the record before us. Taking the record as a whole we believe that the proof resulting from the evidentiary facts adduced leads to a conclusion differing from that arrived at in the earlier *Shell* case, *supra*.

In explanation of the foregoing statement we believe that a brief statement of the history of the issue involved is in order. In *Borne Scrymser Co.* v. *United States* an issue almost identical with that here presented was passed upon by this court and the Court of Customs and Patent Appeals. The merchandise in that case consisted of a coarse, thick mineral oil obtained in the following manner: Crude petroleum was subjected to distillation, during the course of which various so-called "fractions" were produced in order as follows: Gasoline fraction, kerosene fraction, gas oil fraction, lubricating fraction, etc. The lubricating fraction was subjected to a so-called "refining" process in which sulphuric acid, caustic soda, and water were used. This produced a heavy lubricating oil and a tarry sludge. The lubricating oil was further refined by the same process, the end products

being a white, odorless mineral oil, and the coarse, thick oil residue which formed the subject matter of protest in that case. It was assessed with duty by the collector of customs at the rate of 20 per centum ad valorem under the provision in paragraph 56 of the Tariff Act of 1930 for "oils * * * the composition and properties of which have been changed by * * * chemical process, and not specially provided for." It was claimed in the protest to be entitled to entry free of duty under the provisions of paragraph 1733, *supra*.

In our decision in that case, reported as T. D. 47062, a majority of this division held that the oil residue involved was not entitled to free entry as a distillate of petroleum for the reason that it was the product of a refining operation and not of a distilling operation.

On appeal to the Court of Customs and Patent Appeals, 22 C. C. P. A. 475, T. D. 47465, that decision was reversed. The late Presiding Judge Graham, writing the unanimous opinion of the court, among other things, said:

> The record shows that all petroleum distillation fractions, except the gas oil fraction, are refined before they are ready for commercial use, usually by a sulphuric acid and alkali treatment. Successive refinements produce purer products of the same character. The language of the paragraph plainly includes highly refined gasoline or kerosene equally with those less refined. The paragraph does not delimit the extent of refinement. Likewise, when the lubricating fraction is refined, the limit to which it may be refined is not set by the law.

As hereinbefore stated, merchandise identical with that here in issue was the subject of decision by this division of the court in *Shell Eastern Petroleum Products, Inc.* v. *United States*, T. D. 49026. The record made before this court in that case indicated that the merchandise was produced in the following manner:

> * * * The crude petroleum is distilled and three different distillation fractions and a residue are obtained. They are: benzine, kerosene distillate, gas oil, and residue. The kerosene distillate and, in some cases, even the gas oil fractions which contain most of the naphthenic acids originally present in the crude petroleum, is treated with the solution of caustic soda prior to any other chemical refining. The separate caustic soda solution which contains the naphthenic acids originally present in the crude petroleum, after a separation of the emulsified hydrocarbons, is treated with sulphuric acid and thereby the crude naphthenic acid results. The crude naphthenic acids are then refined with sulphuric acid (approximately 2 percent) and they are further refined with clay and filtered. The naphthenic acids are then ready for commercial use.

It appeared from the testimony offered by plaintiffs' witnesses that the naphthenic acid which was obtained as the end product of the foregoing processes was the same naphthenic acid originally contained in the kerosene or gas oil fraction distilled from crude petroleum. For the reason that the processes above outlined were identified by apparently competent witnesses as refining processes designed to separate the naphthenic acid from the kerosene or gas oil fraction with which it came over in distillation and to purify the

same, this division of the court held that the decision of the Court of Customs and Patent Appeals in the *Borne Scrymser* case, *supra*, controlled our decision, and the protest claim for free entry under paragraph 1733 as a distillate of petroleum was sustained, the decision of the collector classifying the merchandise as "acids * * * not specially provided for" under paragraph 1, *supra*, and assessing duty thereon at the rate of 25 per centum, being reversed.

On appeal to the Court of Customs and Patent Appeals the decision of this court was affirmed. It is manifest from a reading of the opinion of the appellate court, written by Presiding Judge Garrett, that that tribunal interpreted the evidence offered as establishing that the naphthenic acid involved was a distillate of petroleum which had been obtained by processes which segregated it from other distillates contained in the fraction. As hereinbefore indicated, that was the theory upon which the decision of this court was predicated. The following excerpt from the opinion of the Court of Customs and Patent Appeals is illustrative of the basis of the decision:

The merchandise was imported from Rumania. There is no dispute as to its inherent nature. It is an organic substance, present as such in many, if not all, crude petroleums. *Its nature was not altered by any chemical process. It was simply gotten by itself, or separated from other substances*, by procedure later herein described. [Italics added.]

The complete record now before this court we believe leads to a different conclusion. It now appears that it is commercially impossible to separate the naphthenic acid contained in the kerosene fraction of distilled petroleum by any direct process, and in order to produce naphthenic acid from the fraction the following method is resorted to:

(1) The kerosene fraction is treated with a caustic soda solution, as a result of which the naphthenic acid present in the kerosene fraction combines chemically with the caustic soda to form sodium naphthenate and water. This reaction may be expressed as a chemical equation as follows:

$$C_nH_{2n-1}COOH + NaOH = C_nH_{2n-1}COONa + H_2O$$
(Naphthenic acid) (Caustic soda) (Sodium naphthenate) (Water)

It should be stated that the evidence indicates that the foregoing formula used for naphthenic acid is the generic formula for the series of acids in the naphthenic group. The evidence also shows that the reaction described above between the caustic soda and the naphthenic acid causes a replacement of the H (hydrogen) of the COOH group and leaves the remainder of the formula intact in a chemical sense. For the practical purposes of this decision, therefore, the foregoing generic formula will serve as that of the naphthenic acid involved.

(2) The sodium naphthenate solution, being heavier than the balance of the kerosene fraction, settles to the bottom and is drawn off by physical means.

(3) The separated sodium naphthenate solution is then treated with sulphuric acid. In this process a chemical reaction occurs during which hydrogen from the sulphuric acid replaces the sodium in the sodium naphthenate, while the sodium combines with the sulphate radical of the sulphuric acid to form sodium sulphate. Expressed as a chemical equation this reaction is as follows:

$$2(C_nH_{2n-1}COONa) + H_2SO_4 = 2(C_nH_{2n-1}COOH) + Na_2SO_4$$

(Sodium naphthenate)　　(Sulphuric acid)　　(Naphthenic acid)　　(Sodium sulphate)

It is at once manifest that, while the naphthenic acid thus produced is largely derived from that contained in the kerosene fraction, nevertheless it contains hydrogen that never existed in the kerosene fraction but came from the sulphuric acid used in the treatment of the sodium naphthenate. It follows therefore that the naphthenic acid in issue is *not* the same naphthenic acid which was contained in the kerosene fraction. It is therefore not a distillate of petroleum which has been refined or merely separated from other substances contained in the fraction but is a substance created by chemical action in part from elements extracted from the kerosene fraction and in part from an element separate and distinct from those contained in the fraction.

We think it is amply demonstrated by the record that the use of caustic soda in the production of sodium naphthenate from the kerosene fraction and of sulphuric acid in the production of naphthenic acid therefrom do not constitute the ordinary refining processes applied to petroleum distillates to obtain refined or pure gasoline, kerosene, etc., therefrom. When those chemicals are used in *refining* processes they combine with unwanted impurities and not with the product it is desired to refine. This differentiates the situation in the case at bar from that which obtains when gasoline, kerosene, white mineral oil, etc., are refined. The distinction is that on the one hand a product is *created* by chemical action while on the other a product is *refined* by segregating it from other substances.

Plaintiffs' counsel in the brief filed in their behalf points out that the naphthenic acid produced by the chemical reactions hereinbefore mentioned is identical in structure and use with the naphthenic acid originally contained in the kerosene fraction. This fact, in our view, in no way alters the ultimate fact already ascertained that the naphthenic acid in issue is a product created by chemical reaction of independent elements and is not a distillate of petroleum which has been merely segregated or refined.

We are convinced that had the record now before this court been presented to this court and the Court of Customs and Patent Appeals when the earlier *Shell* case was decided a different conclusion would have been reached. For the reasons hereinbefore given we hold that

the naphthenic acid in issue is not a distillate of petroleum and is not entitled to free entry under the provisions of paragraph 1733, *supra*. Each of the protests is therefore overruled, and, it appearing from the record that the merchandise is in fact an acid which is not otherwise specially provided for in the tariff act, the decision of the collector, so far as the merchandise was classified under paragraph 1, is affirmed. As to the cases wherein the merchandise was classified under paragraph 5, the protests are overruled without affirming the action of the collector.

Judgment will issue accordingly.

### DISSENTING OPINION

BROWN, Judge: This suit against the United States was brought at New York to recover customs duties claimed to have been illegally exacted on the importation of a substance known as naphthenic acid.

The collector took duty at 25 per centum ad valorem under paragraph 1, Tariff Act of 1930, as all other acids, or under paragraph 5 as a chemical compound not specially provided for at the same rate.

PAR. 1. * * * and all other acids and acid anhydrides not specially provided for, 25 per centum ad valorem.

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

The plaintiffs claim refund of all duty taken on the ground that it is properly free of duty under paragraph 1733 of said act reading as follows:

PAR. 1733. Oils, mineral: Petroleum, crude, fuel, or refined, and all distillates obtained from petroleum, including kerosene, benzine, naphtha, gasoline, paraffin, and paraffin oil, not specially provided for.

This identical issue upon the same article was very elaborately and fully tried upon a complete record. Able and exhaustive briefs were filed by *amicus curiae* as well as by the parties plaintiff and defendant.

This division of the Customs Court in a carefully written opinion weighing in detail the evidence presented and all the contentions made or, which it seems to us, could possibly have been made, held the importer was entitled to recover in *Shell Eastern Petroleum Products, Inc.* v. *United States*, T. D. 49026, 71 Treas. Dec. 949. This decision was affirmed by the Court of Customs and Patent Appeals in *United States* v. *Shell Eastern Petroleum Products, Inc.*, 26 C. C. P. A. 132, C. A. D. 6.

The record in that case was admitted in evidence in the case at bar. The Government upon following protests has here attempted to make

a new case. New testimony was then introduced but it cannot be considered new evidence for it is merely cumulative of what went before into the old record.

The Government has filed an elaborate brief claiming vigorously, but we think unsuccessfully, that there is a real factual difference between the two records, and also claiming equally vigorously in effect that we and the court of appeals wrongly construed and applied the law to the facts proved in our first holding. We remain unconvinced that that was so.

There really was and is no dispute about the facts. The naphthenic acid involved is produced by the distillation of crude petroleum. The distillation results in certain fractions from which the naphthenic acid is separated by chemical means. The kerosene fraction generally contains the naphthenic acids sought. It is treated with an aqueous solution of caustic soda. The caustic soda combines with the naphthenic acid and forms sodium napthenate. This solution is heavier than the balance of the kerosene fraction so that it can be physically separated from the fraction.

After the separation is effected the sodium naphthenate solution is treated with sulphuric acid. The sulphuric acid combines with the sodium naphthenate forming sodium sulphate and naphthenic acid. The naphthenic acid thus formed is chemically indistinguishable from the naphthenic acids in the crude petroleum and in the kerosene fraction and has the same physical nature and properties.

Consequently, after the most careful review of this new record and reexamination of the points of law involved, we adhere to our original decision and findings.

Judgment should therefore issue sustaining the claim for free entry under paragraph 1733 and directing the collector to refund all duty taken.

The above upon a subject regularly assigned to the writer was prepared as for a proposed division opinion. Being disapproved by the majority it is now respectfully filed as a dissenting opinion.

In the view of the writer the matter discussed in the majority opinion was all set forth in the original decision of the issue in T. D. 49026, 71 Treas. Dec. 949, decided June 7, 1937. There is no change in the factual situation between that record and this record. The identical contentions of the Government on these identical facts were all overruled both above and below in the original case.

The present majority view in interpreting the effect of the same facts as before is based upon too narrow a chemical distinction, whereas the tariff is made for business men. Our court of appeals in the first case correctly treated it as merely a process of separating out the distillate, naphthenic acid.